Nash, J.
The consideration, which I have been able to give to this case, leads me to a conclusion different from, that to which a majority of the Court have come. From the facts set forth in the special verdict I am of opinion, that the road, over which the defendant was appointed overseer, was at the time of his appointment a public road or highway, duly constituted; and that the defendant was bound to keep it in the repair required by law, and for neglecting to do so, he was guilty of a misdemean- or and punishable by indictment. Originally, the road was a turnpike, erected under the authority of an Act of the General Assembly of the State. It was completed in 1830, toll gates erected and the proper tolls exacted from those bound to pay them. At the end of four years, the gates were removed by the grantee of the franchise, and the road thrown open to the pubiic, and so continued for twelve years, the citizens of the country, for all that period, passing and repassing as over any other public highway. At the end of this time, the County Court, at the instance of a portion of the citizens of the County, and with the knowledge of the grantee, appointed the defendant overseer of that portion of the road embraced in the indictment. The whole of the road lay within the County of Yancy. The objection is, that the County Court had no power to constitute this road a public road, in the manner, in which it was done, and that, therefore, the an. *660 'pointment of the defendant, as overseer, was void and of ho effect. If the first proposition fails, the second follows, hf course, its fate.
There are three modes known to our law, by which a public road may be established — by dedication, by an uninterrupted use of it by the public for twenty years, and by the mode pointed out for legislative acts. The two first are by the common law, and have been repeatedly recognized by the decisions of the Supreme Court. — Woollard v. McCulloch, 1 Ire. 436. State v. Marble, 4 Ire. 320. Smith v. Harkins, 3 Ire. Eq. 622. When the road, in this case, was finished by the grantee, according to his contract, he acquired in the land over which it ran, for the term specified in his charter, a legal interest, which was liable to the payment of his debts, and if sold under execution against him, the purchaser would acquire a valid legal title to the interest owned by him. In such case, the ownership of the land or road would be separated from the franchise, which would still remain in the grantee, for it could not be sold. State v. Rives, 5 .Ire, 207. This property or interest in the land or road was susceptible of being dedicated by the grantee to the public ; for,' in Smith v. Harkins, his Honor the CiiieR Justice, in delivering the opinion of the Court, states it as a plain principle, that “private persons may dedicate their land or other property’to the public.” Here, the owner of the turnpike road abandoned it to the public, by removing his gates and suffering the public to pass over it free of toll. It is true, that no usei short of twenty years, vi ill raise'k presumption of a dedication; but here there is no room for a presumption — the case states he did abandon it- tó the public use, which is in itself a dedication. There is no form, by which a dedication shall be made,pointed out in the authorities ; and I can conceive of no otbér better adapted to the purpose, more expressive of the intention of the grantee, than the one adopted by him, mofe *661 especially as the land itself, over which the road ran, which is embraced in the indictment, was his freehold. I admit, that the grantee here could not, of his mere action, by such an abandonment of the road, strip from his own shoulders the obligation of keeping the road in repair and throw it upon the public. Something more was necessary. — the public, through its constituted authorities, must accept the road. This, I hold, has been done by the Connty Court of Yancy, in appointing overseers over the road. In Smith v. Harkins, it is declared by the Court, that “the making and regulating roads, fences and bridges are the proper subjects of political action and are necessarily governed by the will of the law making power, or of those, to whom it may be delegated,” p. 622. This is said in reference to the claim by the defendant in that case to erect a free bridge and dedicate it to the use of the public. The Court admit the principle, but qualify it with an exception, “but not so as to injure or impair exclusive rights, previously granted by the public. To authorise such interference they must show the acceptance thereof by the regular organs of the community, the constituted authoritiesand at page 620 they show, that the constituted authority meant in. that case was the County Court. And' such is the spirit and meaning of the legislative acts of our Scate. It is said, however, that this is not an open question — that the case of Balter and Wilson, 3 Ire. 169, is decisive of it.-— To my apprehension, that case does not justify the conclusion, which is drawn from it. That conclusion is, that the County Court of Yancy could not, by their acceptance of the road in this case, constitute it a public road — that, in order to constitute it such, by their action, the directions of the act of 1784 must be pursued; nor would it have been an authority in this case, if it had so decided. The facts in the two cases are essentially different-. What were they in the former 1 The Government of the Uni *662 ted States, by its agents, had surveyed and marked out a line of road, contemplated to be made under its authority; but no such road was opened ; and the County Court, acting upon the idea, that the survey constituted a public road, appointed the defendant an overseer upon it. The Court decide, that the appointment of the overseer was Void; and the opinion shows clearly why it was so. His Honor Judge Gaston says : ‘‘Our laws are explicit in re» quiring that no new road shall be laid out, but by a judgment of the Court upon petition filed.” ‘’These requirements, (that is, as set forth in the 2nd section of the act of 1784,) would be substantially annulled, if the mere appointment of an overseer or assignment of bands to a supposed road were tobe held,per se, a judicial determina, tion, that a public road be laid out, where none existed before.*’ In speaking of the liability of the overseer arid hands, the opinion concludes, “But neither the one nor the other have failed in the performance of duty in regard tc a public road, if it appear, that such road has no existence either in law or in fact.’* This opinion, as I understand it, establishes this proposition, and no other, that when there is no road in existence, no road defacto, the County Court cannot lay off or establish a new road on land previously granted without pursuing the requirements of the act of 1784 If the decision had the effect now attributed to it, it would be a virtual abrogation of the common law mode of establishing public roads; andthat would be directly in conflict with the opinion of this Court in Wootland and McCulloch, whefe it is decided, that the common law modes of establishing public roads are not repealed by our Statutes or any of them. In this case, there was a public highway in existence, when the order was made appointing the defendant an overseer over it —<a road established by the highest authority known to the law in the establishment of roads, and. which had been used by the public for twelve years as a public road. *663 To such a state of facts, the case of Baker v. Wilson does not apply, nor could the Court have intended it should. Suppose the road had been kept up as a turnpike, un~ til the expiration of the charter, and either the Legislature had refused to re charter it, or the owner did not desire it; or suppose, that the owner of the franchise had, after erecting the road, forfeited it, and by due course of law the charter had been repealed — or suppose the owner of a tract of land, adjoining the town of a newly established County, opens a road through it to the town and gives it to the public — can it be pretended, that in either of these cases, the County Court cannot adopt the road, as a public road, without a petition regularly filed and a jury ? Where the necessity of a petition — the road is already in existence? Where the necessity ofá jury —it is already laid oif? Whether the public interest or convenience requires a public road there, the County Courts are the exclusive Judges. The language of the acts of 1784 and 1813 strongly sustains I think, the view taken by me. It is, “the Courts of Pleas and Quarter Sessions shall have full power and authority, &c., to order the laying out of public roads,” &c., evidently showing, that the provisions in them extended only to the establishing of new roads. But it is further said, the owner of the franchise could not surrender it to the County Court. Let that beso. It is not.necessary in my view to decide that question here. The freehold in land may be in one person,and a right of way over it in another. The ownership of the road and franchise are separate and distinct interests are governed by separate and distinct rules. In conclusion, I can but repeat, that, in my opinion, the dedication of the road in question was complete so far as the owner of it was concerned, when he removed his gates and abandoned it to the use of the pubic, for it is rather -the intention of the owner, than the length of time of the use, which must determine the fact of dedication ;— *664 Woolidge on Ways, p. 11, and 11 East 376 ; and that the County Court had the power to accept the dedication, and by the appointment of overseers did acceptit. I consider .the opinion of the Court in this case, as materially shaking the authority of those previously made by the Court, on the subject of public roads.